UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT HUMINSKI,
    Plaintiff,

v.

STATE OF CONNECTICUT, et al.,
    Defendants.

No. 3:14-cv-1390 (MPS)

## MEMORANDUM OF DECISION

### I. Introduction

Scott Huminski ("Mr. Huminski"), proceeding *pro se*, brings this complaint seeking declaratory and injunctive relief against a large number of defendants based on an alleged violation of his First Amendment and due process rights. Because Mr. Huminski has failed to allege facts showing that he has standing to challenge the Massachusetts criminal stalking statute and the common law of Vermont, this Court dismisses those claims, as it does not have subject matter jurisdiction to hear them. The Court dismisses Mr. Huminski's remaining claims because they are frivolous.

### II. Background

Mr. Huminski alleges that the criminal harassment statutes in Arizona and Connecticut,[1] the criminal stalking statute in Massachusetts,[2] and the common law in Vermont chill his speech in violation of the First Amendment, because such laws prevent him from posting "anti-police-state music" online.[3] (*See, e.g.*, Compl. ¶¶ 46, 75.) He also alleges that the named defendants, in

---

[1] Mr. Huminski identifies the relevant statutes as Ariz. Rev. Stat. § 13-2921 (Compl. ¶¶ 7, 14), and Conn. Gen. Stat. § 53a-183. (*Id*. ¶¶ 14, 17.)

[2] Mr. Huminski identifies the relevant statute as Mass. Gen. Laws c. 265, § 43. (*Id*. ¶¶ 66-67.)

[3] Mr. Huminski has not provided a further description of his music. For purposes of this ruling, the Court will assume the content is protected political speech, as alleged by Mr. Huminski.

1

both their "individual and official capacities" (*id*. ¶ 6), have denied Mr. Huminski his First Amendment and due process rights by preventing him from filing future "probate/estate litigation" against his brother, and by preventing him from communicating with law enforcement officials and others in Arizona, due to alleged "threats" Mr. Huminski has received from "government officials" under the authority of the criminal harassment statutes in Arizona and Connecticut, and the common law of Vermont. (*Id*. ¶ 14; *see also id*. ¶¶ 16, 36, 46, 51, 64.) He alleges these actions demonstrate that "availing one's self to redress in the courts, 'the court process,' constitutes *per se* harassment worthy of retaliation with years of criminal prosecution," and that he is therefore unable to file future litigation. (*Id*. ¶ 39.) In addition, Mr. Huminski alleges that the Massachusetts criminal stalking statute, Mass. Gen. Laws c. 265, § 43, is unconstitutionally vague and overbroad because it "targets core political speech." (*Id*. ¶ 67.) Finally, Mr. Huminski seeks declaratory and injunctive relief from this Court on 27 different issues.

### III. Legal Standards

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1146 (2013). "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Id*. (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id*. at 1147 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly*

impending." *Id*. "Thus, we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The party invoking federal jurisdiction has the burden of establishing his standing. *Cent. State Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005).

Because "[s]tanding 'is an essential and unchanging part of the case-or-controversy requirement of Article III' . . . [i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Id*.

Furthermore, district courts possess "inherent authority" to dismiss actions *sua sponte* as frivolous even where a *pro se* plaintiff has paid the filing fee. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (per curiam). An action is frivolous where it is "based on an indisputably meritless legal theory" or presents "factual contentions [which] are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 327 (1989).

Finally, when reviewing a *pro se* complaint, the court must assume the truth of the allegations and construe them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixson*, 480 F.3d 636, 639 (2d Cir. 2007).

**IV. Discussion**

Even after construing Mr. Huminski's complaint to "raise the strongest arguments" it suggests, this Court finds that Mr. Huminski has failed to allege that he has sufficient Article III standing as to his Massachusetts and Vermont claims. In addition, Mr. Huminski's remaining claims as to the Connecticut and Arizona statutes must be dismissed as frivolous.

### A. Mr. Huminski does not have standing to challenge the Massachusetts criminal stalking statute

In his claim attacking the constitutionality of the Massachusetts criminal stalking statue under the First Amendment, Mr. Huminski alleges that he "was threatened with prosecution under Massachusetts [sic] cyber stalking law, Mass. Gen. Laws c. 265, § 43, by Randy[,]"[4] a private citizen. (Compl. ¶¶ 66, 67.)  First, even construed liberally, the complaint does not allege that "Randy" was a state actor with the authority to prosecute Mr. Huminski under Mass. Gen. Laws c. 265, § 43, a criminal statute, and Mr. Huminski's allegation that "officials from the Commonwealth of Massachusetts visited [his] websites" does not suggest that a prosecution is imminent.  Mr. Huminski has therefore not alleged that he faces a "certainly impending" threat of prosecution in Massachusetts as would be required to challenge the statute's constitutionality, because private citizens do not have standing to enforce criminal statutes.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Bunker Hill Distrib., Inc. v. Dist. Attorney for Suffolk Cnty.*, 376 Mass. 142, 147 (1978) ("[A]pplication of criminal statutes in the first sense generally lies with the public prosecutor. . . .  Permitting declaratory or injunctive relief in the absence of a threat of enforcement removes control of litigation from the prosecutor and subjects limited prosecutorial resources to allocation, not through the judgment of the appropriately elected official, the district attorney, but at the instigation of insular interests.").

### B. Mr. Huminski does not have standing to challenge Vermont's common law

Mr. Huminski also lacks standing to challenge Vermont's common law because he fails

---

[4] Mr. Huminski identifies this individual as "Randy of the Justice for Vinnie website[.]"  (Compl. ¶ 66.)

to allege any facts suggesting that he faces a "certainly impending" threat of prosecution by Vermont law enforcement should he file probate or other litigation, post political videos online, or take any other action. In fact, Mr. Huminski's only allegations concerning the possibility of prosecution in Vermont are based on the recounting of a concluded proceeding, from 17 years ago, that does not relate to his proposed activities. (Compl. ¶¶ 32, 34.) Mr. Huminski, a resident of Florida (*id*. ¶ 68), has not alleged any ties to Vermont within the last 17 years. And although Mr. Huminski recounts his prior litigation in Vermont in detail (*see id*. ¶¶ 27-37), none of these allegations demonstrate that he has suffered more than a hypothetical or speculative injury, much less that prosecution from Vermont's state officials is "certainly impending" should he file a lawsuit or post political videos online, or that filing litigation or posting political videos is prohibited by Vermont common law in any way.[5] Therefore, because the "'threatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient," Mr. Huminski has failed to allege he has standing. *Amnesty Int'l*, 133 S. Ct. at 1147; *see also id*. at 1153 (holding that a plaintiff cannot "establish standing simply by claiming that [he] experienced a 'chilling effect' that resulted from a government policy that does not regulate, constrain, or compel any action on [his] part.").

C.      **Mr. Huminski's challenges to the Connecticut and Arizona statutes are Frivolous**

This Court also dismisses as frivolous Mr. Huminski's First Amendment claims against the Connecticut and Arizona harassment statutes. Mr. Huminski alleges that he received a

---

[5] Mr. Huminski's lack of standing here is further illustrated by his two prior Vermont cases, *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005) and *Huminski v. Rutland Cnty.*, 134 F. Supp. 2d 362 (D. Vt. 2002). Both cases involved *actual* prohibitions from Vermont law authorities against Mr. Huminski's physical presence at court proceedings. *See Corsones*, 396 F.3d at 58 ("Vermont officials . . . prohibited Huminski's presence in and around certain state courthouses."); *Rutland Cnty.*, 134 F. Supp. 2d at 363 ("Defendants (court personnel, law enforcement officers and others at the Vermont District Court in Rutland, Vermont) requested and issued notices of trespass prohibiting Huminski from entering upon the lands or buildings of the Rutland District Court and all courthouses in the state."). Here, by contrast, Mr. Huminski has not alleged a "certainly impending" future threat of prosecution, let alone an actual injury.

telephone call from a Wilton, Connecticut, police officer requesting that Mr. Huminski stop contacting his brother, who is allegedly a police officer in Norwalk, Connecticut. (Compl. ¶ 17.) Mr. Huminski also alleges he received an email from an Arizona police officer requesting that he stop contacting Justin M. Nelson, a private actor, deceased as of 2012, and Mr. Nelson's attorney in Arizona. (*Id*. ¶¶ 8-9, 14.) Mr. Huminski also alleges that a public relations official with the Maricopa County (Arizona) Sheriff's Office sent him an email on July 20, 2011, threatening to "pursue a legal remedy" if he did not stop sending the sheriff's office "harassing emails." (*Id*. ¶ 21.) Although these allegations are vague—some of the alleged conduct is undated or otherwise unaccompanied by factual context—the Court, mindful of its obligation to construe the allegations of a *pro se* plaintiff liberally, finds that they arguably allege enough facts for standing. In particular, Mr. Huminski alleges that should he contact these individuals, some of whom he has tried to contact within the past few years (*id*.), he faces prosecution under Connecticut's and Arizona's respective harassment statutes, and that this threat is chilling further contacts on his part.

But these claims are frivolous because they are "based on [] indisputably meritless legal theor[ies.]" *Neitzke*, 490 U.S. at 327. Mr. Huminski's as-applied challenge to these statutes is meritless because his allegedly inhibited conduct—repeatedly contacting individuals who have asked or warned him not to do so or who have obtained a protective order against him—is not constitutionally protected. *See e.g.*, *United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014) (upholding constitutionality of interstate stalking statute because "the proscribed acts are tethered to the underlying criminal conduct and not to speech[]"); *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012) (holding that interstate stalking statute's prohibition against criminal contact "[are] directed toward 'course[s] of conduct,' not speech, and the conduct it proscribes is

6

'not necessarily associated with speech[]'") (quoting 18 U.S.C. § 2261A(2)(A)); *State v. Moulton*, 310 Conn 337, 362 (2013) (Conn. Gen. Stat. § 53a-183 constitutionally applies to conduct and unprotected speech); *see also State v. Marsala*, 43 Conn. App. 527, 534, 537 (1996) (finding sufficient evidence to convict defendant under Conn. Gen. Stat. § 53a-183 where defendant made twenty-five calls to victim in three months and where victim repeatedly asked defendant to stop calling).

And his overbreadth challenges to the Connecticut and Arizona statutes are frivolous because neither statute infringes upon protected speech. The highest courts in Arizona and Connecticut have clearly held the statutes at issue do not apply to speech or conduct protected by the First Amendment. *State v. Brown*, 207 Ariz. 231, 236 (2004) ("In sum, § 13-2921 regulates neither constitutionally protected speech nor expressive conduct and, thus, does not implicate the First Amendment."); *Moulton*, 310 Conn. at 362 (holding that § 53a-183 applies only to conduct and speech not protected by the First Amendment). This Court is bound by these interpretations of the challenged statutes, and it is thus compelled to reject the notion that these laws are chilling Mr. Huminski's protected activity.

Mr. Huminski has made and lost similar arguments previously. *See, e.g., Huminski v. Vermont*, No. 2:13-cv-692-JES-DFN, 2014 WL 169848 (M.D. Fla. Jan. 15, 2014). In fact, this complaint is one of a series of cases that Mr. Huminski has filed based on roughly the same events. *See, e.g.*, *id.* (filed Aug. 28, 2013); *Huminski v. Vermont*, No. 1:13-cv-23099-ASG (S.D. Fla. filed Aug. 28, 2013); *Huminski v. Vermont.*, No. 2:13-cv-685-JES-DNF (M.D. Fla. filed Sept. 25, 2013); *Huminski v. Heredia*, No. 2:11-cv-00896-DGC (D. Ariz filed on May 4, 2011).[6]

---

[6] A number of the courts above have issued Mr. Huminski warnings regarding sanctions should he continue to engage in frivolous filings. *See, e.g.*, *Huminski v. Heredia*, No. CV 11-0896-PHX-DGC, 2012 WL 1940624, at *7 (D. Ariz May 29, 2012); *Huminski v. Vermont*, No. 2:13-CV-692-FTM-29DNF, 2014 WL 169848, at *5 (M.D. Fla. Jan. 15, 2014). This Court now issues a similar caution to Mr. Huminski, who has filed over sixty motions in the

7

Mr. Huminski makes no attempt to hide his court hopping, acknowledging in his complaint that "[m]uch of this document was cut and pasted from Mr. Huminski's earlier papers and court filings." (Compl. ¶ 70.)

The Second Circuit has upheld the *sua sponte* dismissal of a *pro se* plaintiff's frivolous complaint, in similar circumstances, even where that plaintiff paid the filing fee. *Fitzgerald*, 221 F.3d at 364 ("Accordingly, we hold that district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"). Like Mr. Huminski, Mr. Fitzgerald was a serial litigant. *Id*. at 363; *see also id*. at 364 n.3 ("It has come to our attention that Fitzgerald has been an active—and perhaps abusive—litigant[.]"). "[A]s courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need [than Circuit Courts] for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." *Id*. at 364. Recognizing this need, and because the legal grounds underlying the claims are meritless and advance "claims of infringement of [] legal interest[s] which clearly do[] not exist[]," *Neitzke*, 490 U.S. at 327, the Court dismisses the Connecticut and Arizona claims.

**D. Individual Counts**

Mr. Huminski's complaint identifies 27 separate "counts" seeking declaratory and, in a few cases, injunctive relief. Some of these counts appear to relate to his challenge to the Massachusetts, Vermont, Connecticut and Arizona laws, and some do not. Those that do, of course, fail for the same reasons those challenges fail—which are discussed above. *See, e.g.,* Count One (seeking declaratory judgment that statutes are unconstitutional); Count Four (seeking injunction against the statutes and Vermont common law); Count Five (seeking

---

eight months this action has been pending: Further frivolous filings on his part may result in sanctions, including, if necessary, the imposition of limitations on his ability to file additional actions. *Fitzgerald*, 221 F.3d at 364 n.3.

injunction "against the aforementioned threats from police . . . "); Count Twelve (seeking declaration that harassment laws of the states at issue "have obstructed service of this matter and chilled Huminski's expression . . . "); Counts Thirteen, Eighteen Nineteen, Twenty One, Twenty Two (seeking various declarations about the harassment laws of the states at issue). To the extent any of the other "counts" for declaratory judgment or injunctive relief are premised on other claims, the Court dismisses them as well, for the following reasons.

As discussed above, "[t]o obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia,* 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "That is, a plaintiff must demonstrate a 'certainly impending' future injury." *Id.* (quoting *Whitmore,* 495 U.S. at 158). In addition, even if a plaintiff pleads facts demonstrating standing, a court may choose to dismiss an action for declaratory relief if the relief sought is purely retrospective or would not otherwise serve a useful purpose. *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (declaratory judgment statute is a "broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (in deciding whether to entertain an action for declaratory judgment, district court should ask "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."); *Ippolito v. Meisel*, 958 F. Supp. 155, 165 (S.D.N.Y. 1997) ("[C]ourts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs."); *Springfield Hosp. v. Hoffman*, 2010 WL 3322716, at *7 n.4 (D. Vt. 2010) (same).

These principles call for dismissal of those of Mr. Huminski's requests for declaratory and injunctive relief relief not already foreclosed by the Court's earlier discussion of the challenges to state harassment laws.  Most of these requests ask the Court to make pronouncements about various past events, and many also relate to past conduct that the complaint does not allege—at least with any factual allegations—is likely to recur. Counts Two, Three, Six through Eleven[7] and Sixteen[8] fall into both categories.

The remaining requests seek declarations about general propositions that appear to be unconnected to any matter remaining in controversy.[9]  This Court lacks jurisdiction to issue advisory opinions that would have no practical impact. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (requiring "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment[]"); *Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir. 1991) ("A federal court lacks the power to render advisory opinions and the authority 'to decide questions that cannot affect the rights of litigants in the case before them.'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  These claims are therefore dismissed.

### E.     Leave to Amend

---

[7] Mr. Huminski includes two Count Elevens, they will be distinguished as Count Eleven(1) and Count Eleven(2).

[8] Specifically, Counts Two and Nine through Eleven(1) request declaratory judgments that police officers of the town of Gilbert, Arizona violated Mr. Huminski's constitutional rights, and are based on an arrest in May, 2012 (Compl. ¶ 40).  Count Eleven(2) seeks a declaration about the actions of Vermont prosecutors some 17 years ago. Counts Six and Seven request declaratory judgments that police officers conspired to violate Mr. Huminski's rights, and Counts Three and Eight request declaratory judgments that police officers in the City of Sunrise, Arizona, obstructed justice and committed fraud, respectively.

[9] Counts Twelve, Fifteen, and Eighteen request declaratory judgments that litigation is protected speech.  Counts Seventeen and Nineteen request declaratory judgments that filing litigation violates criminal harassment statutes. Counts Twenty-Four and Twenty-Five request declaratory judgments that Mr. Huminski's music is protected speech.  Count Twenty requests a declaratory judgment that no-contact requests violate the First Amendment. Count Twenty-Three requests a declaratory judgment that certain people and journalists are "reasonable people." Finally, Count Twenty-Six requests a declaratory judgment that the "interception of court papers followed by an assault is an unconstitutional and illegal retaliation and response to a federal civil rights lawsuit by the Maricopa County Attorney's Office."

Although the Court has concluded that the complaint must be dismissed, it will consider whether Mr. Huminski may amend his complaint. Under Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "Although the rule requires that leave should be granted freely, it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

Futility of the amendment is a reason to deny leave, *id.*, and in this case it is a compelling one. When a plaintiff seeks to amend his complaint, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of America*, 626 F.3d 699, 726 (2d Cir. 2010); *see also Kallas v. Fiala*, 2015 WL 399127, at *1 (2d Cir. 2015) ("*Pro se* complaints should be liberally construed, and district courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend, unless it would be futile.") (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Since filing his complaint, Mr. Huminski has filed no fewer than 64 motions, including repetitive motions to amend his complaint. (*See* ECF Nos. 43, 88, 89, 104, 105, 132, 190.) This Court has reviewed the bevy of proposed amended complaints attached to those motions, and finds that, because they suffer from the same problems as his original complaint, granting Mr. Huminski leave to amend at this point would be futile. More specifically, the proposed amended complaints, like Mr. Huminski's original complaint, either ask this Court to issue retrospective declaratory and injunctive relief or advisory opinions, or set forth claims that are frivolous.

Mr. Huminski's First Amended Complaint, dated **October 1, 2014**, asks this Court to issue a retrospective declaratory judgment stating that government officers in the Town of

Wilton, Connecticut, discriminated against the disabled and made statements constituting "hate speech and defamation."[10] (ECF No. 43.) Likewise, Mr. Huminski's Second Amended Complaint, dated **October 19, 2014**, requests a retrospective declaratory judgment that this Court and others, by taking various actions in response to his filings, have "discriminate[d]" against the disabled.[11] (ECF Nos. 88, 89.) In any event, Mr. Huminski has failed to plead facts from which the Court might infer a violation of the Americans with Disabilities Act.

Similarly, Mr. Huminski's Supplemental Motion for Leave to Amend, dated **November 16, 2014**, asks this Court to grant a "declaratory [judgment] stating that reporting of crimes (of Justine M. Nelson)[—who is allegedly dead—]to the police agencies" is constitutionally protected speech.[12] (ECF No. 105.) Again, the relief sought relates solely to past conduct and the substance of the claim appears to be related to his challenge to the Arizona statute, which the Court has already dismissed.

Next, Mr. Huminski's Supplemental Motion for leave to Amend, dated **December 4, 2014**, attempts to add Jeffry Spahr, legal counsel for the City of Norwalk, as a defendant on the grounds that Mr. Spahr violated Mr. Huminski's constitutional rights by failing to provide proper training to Mr. Huminski's brother.[13] This amendment is frivolous because no facts are pled

---

[10] Specifically, Mr. Huminski alleges that Wilton government officials discriminated against the disabled because a Wilton official allegedly stated to Mr. Huminski's process server, "They did call 'you the crazy guy who got arrested[.]'" (First Am. Compl. ¶ 85.)

[11] Mr. Huminski's added count requests, "A declaration that the Court [and other defendants] discriminate against the disabled and violate the ADA." (Second Am. Compl. Count Twenty-Eight.)

[12] On the same day, Mr. Huminski filed a document he entered on the docket as a "Motion for Leave to File Amended Complaint," but which he labeled as "Reply to Oppositions [sic] to Preliminary Injunction." (ECF No. 104.) Even if the Court construes this filing as another motion to amend, it denies the motion because it only repeats the conclusory allegations the Court has already determined are frivolous and does not allege any new claims or factual allegations.

[13] In this amendment, Mr. Huminski alleges that "Mr. Spahr is staff legal counsel for Norwalk and he has failed to inform [Mr. Huminski's brother] that a lifetime arrest threat without expiration and without judicial review that impacts first amendment conduct is unconstitutional." (ECF No. 132.)

suggesting that Mr. Huminski's brother's alleged conduct—reporting Mr. Huminski to Wilton Police—was undertaken in anything but a private capacity. *See Miqui v. City of New York*, No. 01-CV-4628(FB) (VVP), 2003 WL 22937690, at *4 (E.D.N.Y. Dec. 5, 2003) ("Because § 1983 requires action taken under color of law, 'it is clear that personal pursuits of police officers do not give rise to section 1983 liability[.]'") (quoting *Screws v. United States,* 325 U.S. 91, 111 (1945)). Further, neither the complaint nor the proposed amendment actually alleges facts suggesting that Norwalk has issued a "lifetime arrest threat" to Mr. Huminski, let alone one that would infringe on First Amendment rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007) (the court need accept as true only factual allegations and not conclusory allegations or legal conclusions); *Moulton*, 310 Conn. at 362 (Conn. Gen. Stat. § 53a-183 does not apply to speech or protected conduct); *Marsala*, 43 Conn. App. at 537 (sufficient evidence to convict under § 53a-183 where defendant's conduct included repetitive, unwanted contacts).  Because this motion would also just add another frivolous claim, leave to amend would be futile.

In addition, Mr. Huminski's Supplemental Motions for Leave to Amend, dated **December 26, 2014**[14] and **January 14, 2015**,[15] simply repeat allegations from Mr. Huminski's original complaint and do not make any independent legal claims.

Finally, Mr. Huminski's Motion for Leave to Amend, dated **April 4, 2015**, seeks to add "tort damages arising out of the death threat received by [Mr.] Huminski on 4/2/2015." (ECF No. 190.)  This new claim is based on Mr. Huminski's "notification of death threat from the town of Gilbert," filed on April 2, 2015 (ECF No. 185), which attaches a typed statement,

---

[14] Mr. Huminski alleges that "[his brother] followed the advice of counsel for Norwalk and chose to continue the lifetime police threats against Huminski[.]"  (ECF No. 157.)

[15] Specifically, Mr. Huminski alleges that "the City of Surprise, Arizona participated in the conspiracy to issue perpetual summary arrest threats against Huminski with the co-conspirators of Norwalk, Wilton, Gilbert and employees and officials with those municipalities."  (ECF No. 168.)

together with an envelope bearing a stamp and postmark from Phoenix, Arizona, purportedly from an Officer Ryan Pillar. The statement begins, "Hello Scott. It's almost time for you to die." (ECF No. 185-1.)[16] Officer Pillar is not mentioned in the complaint, and the motion for leave to amend does not allege any facts about him other than that he is employed by the Town of Gilbert, Arizona. There are neither allegations suggesting what cause of action Mr. Huminski seeks to plead against Office Pillar nor allegations suggesting why this Court might have personal jurisdiction over a police officer in Arizona in connection with a letter sent from Arizona to Florida. For these reasons, allowing this amendment, too, would be futile, and the Court declines to do so.

Lastly, to the extent Mr. Huminski claims he is entitled to court-appointed counsel to argue his case (ECF No. 63), he is incorrect. Federal courts are not required to appoint counsel in civil cases, let alone for plaintiffs able to afford filing fees. *See In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984) ("In non-criminal cases federal courts have the authority to appoint counsel, but generally they are not required to do so. The determination of whether appointment of counsel is necessary rests with the discretion of the court.") (internal citations omitted); *Gustin v. Potter*, No. 03-CV-6438L, 2006 WL 3169201, at *1 (W.D.N.Y. Nov. 1, 2006) ("It is well settled that there is no constitutional right to appointed counsel in civil cases."). Although Mr. Huminski claims he is indigent, he has submitted no supporting evidence and, in any event, has elected to proceed by paying the filing fee instead of *in forma pauperis*. Were Mr. Huminski proceeding *in forma pauperis*, the Court would still have broad discretion in deciding whether to appoint counsel. *See* 28 U.S.C. § 1915(e)(1) ("The court *may* request an attorney to represent any such person unable to employ counsel.") (emphasis added).

---

[16] After this document was filed, the Court posted a notice advising that it had reviewed the material and concluded that "[t]his is a law enforcement matter." (ECF No. 189.) The Court also noted that Mr. Huminski's papers include a statement that he had contacted the FBI. (*Id.*)

Whenever a court evaluates whether to appoint counsel, it must consider the genuine need for counsel and the potential merit of the plaintiff's claim. Given Mr. Huminski's extensive experience with the legal system, the repetitive nature of the legal issues he pursues, *see* n.6, *supra*, and the sheer number and frequency of his filings in this case, this Court finds that Mr. Huminski does not require counsel to present his case to this Court. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989) (examining "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel[]"). More importantly, Mr. Huminski's *repeated* failure to state a claim and the frivolous nature of his claims weigh heavily against this Court's appointing counsel on his behalf. *See Miller v. Pleasure*, 296 F.2d 283, 285 (2d Cir. 1961) ("The chances of any measure of success for the plaintiff's claims are so highly dubious that a judge cannot properly ask a member of the bar to assume this thankless burden.").

### V. Conclusion

For the reasons set forth above, Mr. Huminski's complaint is dismissed with prejudice, leave to amend is denied, and all pending motions are DENIED as moot. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           April 14, 2015